JOHN D. COBB v. J. W. CHAMPLIN, Admr., &c.

ASSIGNMENT: POWER OF ATTORNEY.—A. being indebted to B., by a written power of attorney, authorized him to sell, at a specified price, certain stock belonging to A., and out of the proceeds, to pay an incumbrance on the stock, and to "place the balance to the credit of his account." B. sold the stock as directed, but before any of the price, except what was necessary to remove the incumbrance, had been paid, the purchaser was summoned by the garnishee process, as a debtor of A. In a contest between B. and the garnishing creditor, it was held, that the power of attorney was an assignment of the proceeds of the sale to B., to the amount of A.'s indebtedness to him, and to that extent he was entitled to the proceeds, in preference to the garnishing creditor.

IN error from the Circuit Court of Claiborne county. Hon. Stanhope Posey, judge.

Champlin, the defendant in error, as administrator of one Muir, in April, A.D. 1855, recovered a judgment against John H. Crump for $750 49.

On the 17th of May, 1855, James P. Parker was summoned as a garnishee. Parker answered, that in the early part of May, 1855,

he wrote to J. D. Cobb, of the city of Vicksburg, to purchase for him, on certain specified terms, stock of the Grand Gulf and Port Gibson Railroad Company, and in his letter mentioned Crump, as one who had stock for sale. That on the 14th May 1855, Cobb transmitted to him the written authority of Crump to him, to sell said stock, and also a transfer of the same from Cobb to affiant. There was an incumbrance on the stock, which respondent paid off, and he was now indebted on account of the purchase of the stock, in the sum of $659 72. That he never had any transaction with Crump in regard to the stock, and has understood and believes, that prior to the service of the garnishment, the stock had been transferred by Crump to Cobb, in payment of an indebtedness of Crump, and he therefore believes that Cobb is entitled to the money due by respondent for the stock; that Cobb claims the said sum of money, and in order to be protected in the payment thereof, he asks that Cobb may be summoned to appear and contest with the plaintiff the right to the same.

At the April Term, A.D. 1856, Cobb filed in court his claim in writing, and under oath, averring, "that the twenty shares of Grand Gulf and Port Gibson Railroad stock, mentioned in the garnishee's answer, were bona fide-purchased by him, from the defendant John H. Crump, who sold and transferred the same to him on the 14th day of May, A.D. 1855, and before the service of the garnishment upon Parker ; and that when said garnishment was served, the said Parker was indebted to him for the stock, and not to the said Crump; and so the said contestant says, that the said sum of $659 72, in the hands of said Parker, is due and owing by said Parker, and of right belongs to the contestant."

To this claim the plaintiff replied as follows : " That it is not true that the said sum of $659 72, admitted by the garnishee to be in his hands, is due to John B. Cobb, and of right belongs to him, as the said Cobb has claimed ; but the said plaintiff avers, that at the time of the suing out of said garnishment process, said sum of money was then due to said Crump, and subject to be seized under the process aforesaid."

Upon this issue, the cause was submitted by consent of parties to the judge, who decided that the plaintiff Champlim, was entitled to the money due by Parker the garnishee.

Cobb v. Champlin, Admr., &c.

On the trial the following evidence was introduced by the contestant Cobb, in connection with the answer of the garnishee.

JOHN D. COBB, Esq.

Dear Sir,—The two thousand dollars Grand Gulf and Port Gibson Railroad stock, pledged to Elias Bridges for $    , I will sell for one thousand dollars, and hereby authorize you (to) make the sale and transfer the stock, and after paying Mr. Bridges, place the balance to credit of my account.

Respectfully,
JOHN H. CRUMP.

VICKSBURG, 14th May, 1855.

Upon the foregoing letter was the following indorsement.

VICKSBURG, MISS., May 14th, 1855.

I hereby transfer the stock specified in this to Doctor J. P. Parker, of Port Gibson.

Witness,                                        JOHN D. COBB.
HENRY W. BOWEN.

It was admitted, that Cobb claimed title under the above writing.

Cobb also offered and read in evidence, two promissory notes of John H. Crump, amounting in the aggregate to $538 46. Both of these were dated 1st May, 1855, due one day after date. One of them was payable to " Cobb & Manlove," and the other to " John D. Cobb, agent."

Cobb prosecutes this writ of error.

*H. T. Ellett*, for plaintiff in error.

The plaintiff in error contends:

1. That the instrument of writing executed by Crump, in favor of Cobb, though in form a power of attorney, was in fact an equitable assignment of the stock to Cobb, and entitled him to receive the money due on the sale of it to Parker, in preference to the attaching creditor.

No particular form is necessary to constitute an assignment in equity. Any order, writing, or act, which makes an appropriation

of a fund, amounts to an equitable assignment of that fund. An assignment of a debt may be by parol as well as by deed. 2 Story, Eq. Jur. 381, sect. 1047 ; *Morton* v. *Naylor*, 1 Hill, N. Y. 583; *Clemson* v. *Davidson*, 5 Binn. 392, 398 ; *Heath* v. *Hall*, 4 Taunt. 326, 328. If an order be drawn on a debtor for the whole, or a part of the funds of the drawer in his hands, though the drawee cannot be sued at law without an acceptance, or assent to pay the draft, yet the order would amount, in equity, to an assignment of the debt, and would be enforced, notwithstanding the debtor had not assented to it. 2 Story's Eq. Jur. 378, 379, sects. 1043, 1044, and 1047, and cases cited. And such an order is really in effect, nothing more than a power of attorney to collect the debt, and apply the proceeds to the use of the attorney, though, as we see, it will operate in equity as an assignment.

There are numerous cases holding that a power of attorney to collect a debt, given for a sufficient consideration, operates as an equitable assignment of the debt to the grantee of the power. 2 White & Tudor Lead. Cas. in Eq. part 2, p. 232. *Brownly* v. *Holland*, 9 Vesey, Jr. 28; *Bergin* v. *Bennett*, 1 Caines Cas. 15, 18; *Raymond* v. *Squires*, 11 Johns. 47 ; *People* v. *Tioga*, 19 Wend. 73; *Gerrish* v. *Sweetzer*, 4 Pick. 374; *Knapp* v. *Alford*, 10 Paige, 205; *Welsh* v. *Whitecomb*, 2 Esp. Rep. 565; *Weed* v. *Jewett*, 2 Metcalf, 608. In *Gerrish* v. *Sweetzer*, 4 Pick. 374, it was held, that an irrevocable power of attorney must, prima facie, be construed as an assignment, though admitting of explanation by extrinsic evidence of a different intention. And this case is recognized and approved in the subsequent case of *Weed* v. *Jewett*, 2 Metcalf, 608. In this latter case, there was a power of attorney in usual form, to collect a debt, and at the close were the words, "this being an assignment of the same." The decision was not put on the ground of these words, but the court say, "The instrument authorizes Bryant to receive and discharge the debt, and then declares in effect what shall be done with the money. No particular form of words is necessary to constitute an assignment. It may be quite sufficient to transfer the property, though the word 'assign' should not be used. In *Gerrish* v. *Sweetzer*, 4 Pick. 374, a power irrevocable, to recover, &c., in the name of the constituent, but for the use of the attorney, was held to be an assignment."

To the same effect is *Raymond* v. *Squires,* 11 Johns. 47. To an action on a covenant, the defendant pleaded a release by the plaintiff. The plaintiff replied, that before the release, it was agreed by the plaintiff, that B. should have the use, benefit, and advantage of the covenants, and that in pursuance of that agreement, the plaintiff, before the release, had appointed B. his attorney for him and in his name, and to the use of said B. to sue for, and recover, &c. Held, this was equivalent to a formal assignment, for the letter of attorney being coupled with an interest, was given as a security, and it was not revocable.

In *Knapp* v. *Alford*, 10 Paige, 205, there was a power of attorney given to sell property, collect debts, and manage business, during the principal's absence, and to apply money to pay a debt, on which the attorney was bound as surety, and another debt. Held, that the power was coupled with an interest, which survived the grantor, and could be executed by the agent after his death.

Against the rule established by these cases, is cited first, *Hunt* v. *Rousmaniere*, 8 Wheat. 174; but that case concedes that a power of attorney to sell property, given as collateral security for a debt, is irrevocable by the grantor, and only decides, that as it does not convey the interest, that is, as it does not transfer the title of the property, it is determined by the death of the grantor, if it remain unexecuted at that time.

Chief Justice Marshall, in delivering the opinion says: "But this power, although a complete security during the life of Rousmaniere, has been rendered inoperative by his death." And in a report of the same case in 1 Peters, 15, the court say, that "the inefficiency of the particular security, is consequent upon the death of Rousmaniere." And again, "The kind of security which was chosen, would have been equally effectual for the purpose intended with a mortgage, had Rousmaniere lived until the power had been executed."

Then, the power of attorney, such as the one given by Crump in this instance, was "irrevocable" by him, was a "complete security," "equally effectual with a mortgage," during the life of the grantor, and is only determined by his death before its execution. This case is therefore rather an authority in favor of the plaintiff in error; for it is not pretended that Crump, the grantor, is dead.

*Hall* v. *Jackson et al.*, 20 Pick. 194, is also relied on. It cannot be supposed that this case was intended to overrule *Gerrish* v. *Sweetzer*, 4 Pick.; for the latter case is not alluded to in the opinion, and moreover *Gerrish* v. *Sweetzer* is cited with approbation in the still later case of *Weed* v. *Jewett*, 2 Metc., where the point ruled is clearly stated. And the case of *Hall* v. *Jackson* is very different from the other cases, and also from this case. The power of attorney was not given to the party in interest, nor for the use of the grantee, nor of any other person. There was no authority to sell or dispose, but merely to collect. And no step was taken by the agent, no claim made, nor did the debtor know of the existence of the power, until after the attachment was served. The court said of it: "The transaction with the Browns took place long before the debt was contracted, and it is questionable whether it would have passed by a formal assignment." And again, "Neither the Browns nor their agents ever had any custody, possession, power, or control over the goods or their proceeds. The instrument did not purport to assign or transfer, nor were the Jacksons restrained from collecting the same debts. There was a mere appointment of a common agent to collect and remit, which gave no control or disposing power over the money. It was a simple power to collect debts," &c.

This case does not at all impugn the authorities, that a power of attorney to collect debts, or sell property, in the name of the principal, for the use of the attorney, is prima facie an assignment of the debt or proceeds to the attorney, and is irrevocable.

In *Watson* v. *Duke of Wellington*, it was held, that an engagement to pay out of a particular fund, constitutes an equitable assignment. 1 Russ. & Mylne, 602; 5 Eng. Chan. Rep.

And in *Burn* v. *Carvalho*, directions given to an agent to discharge a liability out of funds in his hands, were decided to be an equitable assignment of the funds in favor of the creditor. And several cases are cited to show that an order upon a third person, having funds of the debtor, to pay the creditor out of such fund, is a binding equitable assignment of the fund. 4 Mylne & Craig, 690; 18 Eng. Chan. Rep.

The instrument relied on in this case as an assignment, is in form of a letter from Crump to the plaintiff in error, dated Vicks-

burg, May 14th, 1855. It says: "The two thousand dollars, G. Gulf and Port Gibson Railroad stock, pledged to Elias Bridges for $    , I will sell for one thousand dollars, and hereby authorize you to make the sale and transfer the stock, and after paying Mr. Bridges, place the balance to credit of my account."

That it was given for a valuable consideration plainly appears; for the writing admits an indebtedness by Crump to Cobb, which it was intended should be partly liquidated by the proceeds of this stock.

The stock itself, that is, the scrip, is also shown to have been in possession of Elias Bridges, to whom it had been "pledged" as security of $340 28, and therefore it was not susceptible of being delivered manually to Cobb at the time of the writing.

It is evident that it was Parker's inquiry for the stock, that prompted Cobb, to take this mode of securing the payment of the debt due to him.

Now, in what light was the transaction regarded by the parties? What were their objects and intentions? Clearly, Crump's object was, after paying Bridges, to apply the residue of the proceeds of the sale of the stock, to the credit of his indebtedness to Cobb. He desired and intended to make that appropriation of the fund.

It is equally clear, that Cobb's sole object in giving the particular form to the transaction, was to embrace the opportunity to secure the debt, in part, which Crump owed him. He at once assumed to be the assignee and owner of the stock. In transferring it to Parker on the same day, he acted in his own name and right as owner of the stock, and did not profess to act as attorney or agent of Crump, or in his name. If he professed to act, or did in fact act, as attorney or agent of Crump, he was bound to act in the name of Crump; and the assignment to Parker, not being made in the name of Crump, would be void. 8 Wheat. 174; Combe's case, 9 Co. 76; *Frontin* v. *Small*, 2 Str. 706; 2 Ld. Ray. 1418; *Wills* v. *Burk*, 2 East, 140; 7 Mass. 14; 16 Ib. 42.

Have the parties done enough to give effect to these objects and intentions? This question is answered, whenever the intention is ascertained. For, if it was the object and intention of the parties to make an appropriation of the fund to the payment of the debt, and if that object and intention appear from the transaction itself,

then, no particular form of words being necessary, and whatever manifests the intention being sufficient, it follows that an appropriation of the fund was made, which will be upheld as an equitable assignment. Anything which shows an intention to assign on one side, and an assent to receive on the other, will operate as an assignment, if sustained by a consideration. No form is necessary, if the consideration be proved, and the meaning of the parties apparent. 2 White & Tudor, Lead. Cas. Eq., Part 2, p. 231; 1 Vesey, 331.

Had Crump directed Bridges, by order placed in Cobb's hands, to deliver the stock to Cobb on payment of what it was pledged for, that, according to all the books quoted, would have operated as an assignment, from the date of delivery of the order to Cobb, before Bridges had any notice of it. How can it be of less effect, simply because Cobb was to reduce it to money, and to place the balance of the proceeds of the sale to the credit of Crump? In this respect the case is like that of *Burn* v. *Carvalho*.

2. But if the equitable interest in the stock did not pass from Crump to Cobb, by the writing in evidence, then it is clear that the assignment made by Cobb to Parker is absolutely void, and the whole foundation of the claim of the defendant in error, is destroyed.

The assignment in question is made by Cobb in his own name and right, as owner of the stock. If he did not own the equitable title, then no title passed by the assignment. For if he was only agent or attorney for Crump, and made the sale in that capacity only, then he was bound to have acted in the name of Crump, and to have assumed to sell the interest of Crump; and as he did not do so, but only sold his own interest, his sale is void as to Crump's rights, and if he (Cobb) had no interest of his own, then the assignment is entirely void. See Combe's case, 9 Co. 76, and other cases above cited.

And if Parker got no title to the stock, then he owed nothing for it; but Crump still owns the stock, and Cobb holds an unexecuted authority to sell it. So it is clear, that if Cobb did not take an interest under the power, then what he has done under it is void, and the plaintiff alone has no claim on Parker; and if he did take an interest, then the plaintiff is equally excluded, for the proceeds

of the sale belong to Cobb. If the stock was not assigned to Cobb, then Crump still owns it, and Parker is not indebted to him at all; and if it was assigned, then the sale to Parker was a contract between Parker and Cobb, and the purchase-money is due to Cobb.

3. But if it be conceded, that Cobb took only a naked power, without any interest, which at any time before its execution was revocable, by the act of Crump, or determinable by his death, or by the interposition of attaching creditors, we contend here, that it was executed before the attachment, so as to vest the proceeds in Cobb. The claim of plaintiff below, proceeds on the ground of a valid execution of the power before service of the attachment; for otherwise Parker was not indebted.

The moment the power was executed, it is not denied that the money belonged to Cobb. All that is claimed is, that before execution a creditor may interpose. Now, here was a sale of the stock, on the 14th of May, for $1000, and the transfer delivered and accepted. Part of the money was paid to Bridges, in discharge of the debt for which the stock was pledged, and the balance was left by Cobb in the hands of Parker. To whom did it belong? Was it Crump's money, which Crump could have demanded from Parker? or was it Cobb's money, by virtue of the original agreement with Crump, and the consequent sale to Parker? It is clear, that from the moment of the sale of the stock to Parker, the money was Cobb's, to control and dispose of as he pleased, and was his, whether he left it in Parker's hands or received it and deposited it elsewhere. Certainly he had the absolute disposal of it; and his giving Parker a short credit on it did not deprive him of his right.

4. The amount really due to Cobb, we contend is not in question in this suit. The assignment shows, it was greater than the contemplated balance on the stock; for it was to be credited with the balance of the proceeds of the sale of the stock.

And the sale being made to Parker by Cobb, the purchase-money is due to the latter. The accounts between Cobb and Crump are not to be settled in this suit. The question is, whether any of this money is owing by Parker to Crump. The question, whether Cobb will or will not owe him on settlement is not involved.

We have not sought to establish the amount of Cobb's claim, further than to give in evidence two notes of Crump, one payable

to Cobb alone, and the other payable to Cobb and Manlove, but belonging to Cobb. His possession of this note is prima facie evidence of a title to it by delivery.

And if the court should be of opinion, that we are entitled to avail ourselves of the assignment by Crump, only so far as we have proved Crump to be indebted to Cobb, still we would be entitled to receive from Parker the amount of these two notes and interest.

In any aspect, we submit that the judgment below ought to be reversed.

*W. S. Wilson,* for defendant in error.

The money in this case was attached in the hands of Dr. Parker. John D. Cobb, under the Act of 1854 (Pamphlet Acts, page 92), came in, and in the language of the Act, "propounded" his claim to the money. He under oath asserted, and that was the issue to be tried, that Crump had sold to him the stock bona fide, and had transferred it to him on the 14th May, 1855. Therefore it was, that he claimed the money arising from the sale to Parker. For if owner of the stock, he was of course entitled to the money arising from its sale.

The power of attorney and the two notes were the only evidence, and the bill of exceptions shows that it was upon the power alone that Cobb relied.

But the power of attorney contains no words of transfer, nor any which can be strained to import a transfer. Crump throughout speaks of the stock as his own. His words are, "The $2000 Grand Gulf and Port Gibson Railroad stock, I will sell for $1000, and authorize you (to) make the sale and transfer," &c., language which absolutely repels the idea that he had already sold to Cobb, stock which, claiming as his own, he empowers Cobb to sell for him. Beyond all doubt, the power of attorney did not prove a sale of the stock, or that any estate or interest therein was intended to be created. The language of the latter clause, "place balance to credit of my account," cannot be construed as furnishing such proof. If it had been shown that the power was given on valuable consideration, and as a security for money at the time advanced, the result would be still the same.

This I will establish by the clearest and most decisive authority.

In *Hunt* v. *Rousmaniere's administrator*, 8 Wheaton, 174, the very question came before the Supreme Court of the United States, and the law was explained with that clearness and precision of language, which characterized all that fell from Chief Justice Marshall.

Hunt had loaned to Rousmaniere two sums of money, with the understanding at the time, that security should be given on two vessels, a brig and schooner, then at sea. Counsel was consulted, who gave the opinion that a power of attorney would be as effectual a security as a mortgage. The power was executed, giving Hunt the right to sell the vessels for the payment of the debt. Before the execution of the power Rousmaniere died, and the plaintiff filed his bill, praying that the administrator might be decreed to join in a sale of the vessels, and that out of the proceeds, the money should be paid.

Two questions arose : 1st. Whether the power of attorney gave Hunt an interest in the two vessels. 2d. If not, whether the court would reform the instrument, so as to carry out the intention of the parties.

In examining the first question, Chief Justice Marshall, after stating the general proposition that a power must be executed in the name of the principal, and is terminated at his death, proceeds to consider whether that rule would be varied in the particular case, by the fact that Hunt, by the express terms of the letter of attorney, was authorized to apply the proceeds of the sale, that might arise from the exercise of the power, to the payment of his debt. He answers the question in the negative, admitting that while the general rule is, that a naked power terminates with the life of him who creates it, yet a power " coupled with an interest," will survive. And the question then was, what is " a power coupled with an interest ?" The answer is, it is a power coupled with an estate in the thing respecting which the power is to be exercised. In other words, to use the language of the judge, " the power must be engrafted on an estate in the thing." Hunt, therefore, having no interest or estate in the vessels themselves, but only an interest in that to be produced by the exercise of his power of sale, had not " a power coupled with an interest." That in which he could have an interest could only come into being after the power was exercised

and at an end, and therefore could not be said to be coupled with the power.

When the case came before the court finally, 1 Peters, 1, it was determined that the instrument could not be reformed on the ground of mistake, as to its legal effect; and that the brig and schooner constituted parts of the general estate of Rousmaniere, in which Hunt could only share legally with other creditors.

This case establishes two legal propositions.

1st. That a power of attorney given to a creditor to sell property, and apply the proceeds to the payment of his debt, does not give him an interest or estate in the property itself.

2d. That the creditor has no interest in the money to be realized by a sale, because the fund is not in existence, but to be produced by the exercise of the power which terminates at the principal's death. To the same effect is the law laid down in Story on Agency.

It must, therefore, be abundantly clear that Cobb, by virtue of the power of attorney, had no interest in the stock itself. He was merely Crump's agent to sell the stock, and assign it, and that too on terms prescribed by Crump himself.

Secondly. It may be insisted as it was on the trial, that the direction contained in the power of attorney to pay Mr. Bridges, " and place the balance to credit of his account," shows an assignment of that balance to Cobb, which will prevail over the claim of the attaching creditor. It is doubtless designed, by the production of Crump's two notes, to have the court infer that they may have formed the consideration of such assignment.

To this I answer, we were not invited to try any such issue. Cobb alleged, and made oath to the fact, that the stock was sold, and transferred to him on the 14th April. Having failed in that, how can he now ask the court to find for him on another and different issue? He swore to the sale and transfer to him of the stock. If that were true, then the stock was his, and it was utterly impossible that it continued to be Crump's in quasi pledge, or held as collateral security for the payment of the two notes. The latter, he cannot now be heard to allege after his solemn asseveration of the truth of the former. But if Cobb, in propounding his claim, had put it in this form, to wit, that the balance of the money was

assigned to him, which he was to collect and apply to the payment of a debt due him, I should still with great confidence contend that upon the evidence, he must fail on such an issue. ·Protesting, therefore, that I am not called upon to meet such an issue, still, not knowing what view may be taken by the court, I will proceed to regard the case as though that issue were presented, and I think it can be conclusively established, that in any point of view, the plaintiff must fail. And in advance of the decisive authorities on which I rely, I wish to remark,

1st. Cobb was to give Crump credit when he received the money in the exercise of his power. But before he received the money, and while it was in Parker's hands, as Crump's, and due to Crump, the attachment was served and payment arrested. I ask if, in the absence of this attachment, Parker had refused to pay, could Cobb have sued for the money as his, or would Crump have been entitled to maintain the suit? And I ask again, if before payment Crump had died, and Cobb's power of attorney had been ended, as it would have been, could Cobb, under the power, have proceeded to complete the business by collecting the money? or would Crump's representatives have been obliged to do so? And if Crump's administrator had got the money, Cobb's power being terminated, would the money have been held for Crump's creditors generally, or for Cobb? Does not *Hunt* v. *Rousmaniere*, 8 Wheat. 174, answer these questions?

2dly. The direction as to the balance, that Cobb should pass it to Crump's credit, was nothing more than the law would have annexed, in the absence of the expression. The words "pass to my credit," have a meaning in mercantile parlance, and import that one party shall charge himself with so much received from the other. But a merchant can pass a sum to my credit, without my owing him a cent. Had Cobb received the money in this case, by operation of law, he would have become a debtor, and Crump a creditor, to the extent of the sum received. So Cobb knew, and therefore he deemed it necessary to try to show that the balance was assigned for the payment of a debt. Hence, the two notes were offered in evidence; one payable to Cobb as agent of some undisclosed principal, the other payable to Cobb & Manlove. But Crump does not, in the power, say that he assigns to pay

these specified debts, or any general debt; nor is that proved by other evidence. He simply says, Receive the money and account with me for it. Had Cobb then received the money, how could he have protected himself in a suit by Crump for money had and received, otherwise than by pleading in offset any money that Crump owed him? But Cobb could not have set off the two notes, because one belonged to some principal, for whom he was acting as agent, and the other to Cobb & Manlove.

These suggestions are offered in connection with the following authorities, which are believed to be decisive of the case for the defendant in error. 2 Spence's Equity, 862. "Though there may be an assignment of a fund, or of part of a fund in equity, which would not be held such at law; yet it would seem that when the transaction is such that the party does not intend to make an assignment of an existing fund, or a part of it, but only to give a lien—that is, as Lord Eldon expresses it, a right to possess and retain—on a fund *to be realized*, the party will not have a lien in equity, unless he have a lien at law." The author cites, in note, Ex parte Heywood, 2 Rose, 357; Reports of Cases in Bankruptcy.

In that case, he states, an order was given to a person to whom a cargo was remitted to pay a debt out of the proceeds, which order was communicated to the creditor. Lord Eldon held that the order did not create a lien, it gave no specific interest in the proceeds to the creditor, but he offered to the creditor an issue to try whether he had any lien on the proceeds. On the trial, Lord Ellenborough held he had not. 1 Starkie, N. P. Rep. 143; Same case, 4 Campbell's Rep.

This case of Heywood being in bankruptcy, arose, I infer, between the assignee in bankruptcy, and the creditor, who claimed under the order to the consignee. The case was cited with approbation in the case from Massachusetts, which I will now cite, and to which I invite the special attention of the court, as being identical in principle with the case now under consideration. *Hall* v. *Jackson*, 20 Pick. 194.

The case was this. The Jacksons were Englishmen, engaged in the manufacture and sale of crockery, in the town of Burslem, in the interior of England. The course of their business was to send their goods to Liverpool, to be shipped, to the care of Brown, Bro-

thers & Co., who shipped the goods and paid the charges.   By an agreement between the parties, Brown, Brothers & Co. were accustomed to accept drafts of the Jacksons, for three-fourths or four-fifths of the amount of the invoices ; commissions of two and a half per cent. being allowed for advances, and one and a half per cent. to be returned, if the Browns were put in funds to meet the acceptances. For the security of the Browns, the Jacksons made their irrevocable power of attorney to a house in each of the cities of New York, Philadelphia, and Baltimore, giving authority to collect all debts due in the United States, with letters of instructions to the attorneys, to remit all money collected to the Messrs. Browns, to be by them credited to the Jacksons.   Homer, a merchant of Boston, was indebted to the Jacksons for goods bought, and was summoned under the trustee process of Massachusetts, similar to our attachment, to answer what he owed them.   He was indebted $743, and the Browns, to whom the Jacksons were indebted, claimed the money on the facts above set forth.

Shaw, C. J., gave the opinion of the court ; 1. That the Browns had no lien on the goods bought by Homer.   2. That the transaction did not amount to an assignment of the debt to the Browns, so as to give them a preference over the attaching creditor.   The chief justice said (pp. 198–9) : "Until (the money was) collected, neither Messrs. Brown & Co. nor the agents in this country, had either the custody, possession, or the power or control over either these goods, or the proceeds, so as to give any priority over any other creditor who should by diligence obtain a legal lien on them." Again, he says : "The instrument does not purport to assign or transfer any debt or any interest to Messrs. Brown & Co., nor contain anything to prevent or restrain the Jacksons from collecting," &c.   "It was a right to acquire a beneficial interest by collection." He then tests the case by supposing the Jacksons had died ; and concludes, that in that event the power would have been revoked, it not having been "coupled with an interest," and he cites the case above referred to, Ex parte Haywood, 2 Rose's Cases, 355.

Apply the case to that now before the court.

Cobb had a power from Crump to sell stock, to collect the money, and account for the proceeds.   He made the sale, but before the

money was collected, and the execution of his power completed, the attachment was laid on the fund in Parker's hands. Supposing that Crump owed him, and the agreement was, that the proceeds should be applied to the payment of a debt, which is not proved, in the language of Chief Justice Shaw, "it was simply a power to sell and collect the money." "It was a right to acquire a beneficial interest by collection." "It did not give any priority over a creditor who should by diligence obtain a legal lien."

It seems to me to be utterly impossible for the plaintiff in error to avoid the effect of this decision. The only distinction between that case and the present, is one altogether unfavorable to him. In the Massachusetts case, it was proved, that the Browns were in advance to the Jacksons, and that it was part of the original understanding, that the powers of attorney to collect debts in this country should be given, and the money collected remitted to Liverpool, to reimburse them the sums which they might advance. Here, however, nothing of the sort is proved. Cobb was to sell, collect the money, and account for it. It is not proved that there was any agreement that the money should be applied to the payment of any debt whatsoever. Two notes of Crump's are produced, and the court is asked to guess mayhap, perchance, it was the intention that the money should be applied to their payment; and thus, upon bare conjecture, defeat a legal lien which a judgment creditor has by diligence acquired. The two notes show besides, upon their face, that Cobb is not entitled to the money due on them. One he holds as agent. The other is due to a partnership.

The words of the power are, "Place balance to credit of my account;" not pay the two notes produced; not pay my account which I owe you; but give me credit on account for the balance left after paying Bridges. How can we know but that there was an actual technical account current between the parties, which, if produced with its debits and credits, would show a large balance in Crump's favor?

Cobb had it in his power to remove all doubts upon the subject, by producing Crump as a witness, and showing, if the fact were so, that the power was given on valuable consideration. Having presented his case with such uncertainty, he has no right to ask a court to "take a leap in the dark."

If Crump had intended to assign this fund specifically to Cobb, a few simple words would have effected the purpose. The whole tenor of the power indicates that directly the reverse was the intent. He speaks of the stock as his; of the money to arise from its sale as his money, to be passed to the credit side of his account.

But I need not insist on this; for if it were shown never so clearly that Crump was largely indebted to Cobb, this power of attorney only gave him the right "to acquire a beneficial interest by collection." He has not collected; but the money, as Crump's money, has been seized by the law in Parker's hands.

I wish to inquire, in conclusion, whether the court, if it shall not concur in my views, will hold that Cobb is entitled to the entire fund in Parker's hands, it being more than sufficient to pay the two notes which he produces? If they will not so hold, then I ask that if error shall be thought to exist in the judgment of the Circuit Court, this court will enter such judgment as it ought to have entered.

FISHER, J., delivered the opinion of the court.

The plaintiff below recovered a judgment in the Circuit Court of Claiborne county, against John H. Crump, and summoned one Parker as a garnishee, who answered, that he purchased of the plaintiff in error a certain amount of the stock of the Grand Gulf and Port Gibson Railroad, which stock had been owned by the defendant Crump; but the garnishee understood that, at the date of the sale, it belonged to Cobb, and he, the garnishee, accordingly denied his indebtedness to Crump. Cobb being summoned to contest the plaintiff's right to the money, alleged that he was, at the date of the sale, the owner of the stock, and that the money was due from the garnishee to him, Cobb. The plaintiff replied, that the money was due to Crump, and liable to the said judgment; and upon this issue the case was tried in the court below, when a judgment was rendered for the plaintiff.

Cobb, the plaintiff in error, read in evidence the power of attorney, in the form of a letter from Crump, authorizing Cobb to sell the stock at a stipulated price, and after paying a certain amount to one Bridges, to place the balance to the credit of Crump's account. Cobb also read in evidence two notes signed by Crump,

and due before the sale of the stock, amounting in the aggregate to the sum of $538 46, and which notes were held by Cobb at the date of the sale of the stock, at least under the showing, such must be the presumption.

Upon this showing, we are clearly of opinion that Cobb's right to the money, to the amount of the notes, was clearly established.

By the terms of the authority to sell the stock, he was authorized, indeed instructed, to place the money to the credit of Crump's account; and this was in effect an assignment of the proceeds of the sale to the extent of Crump's indebtedness to Cobb. By the terms of the sale of the stock, the garnishee undertook to pay to Cobb, and not to Crump; and so far as Cobb's equity or right to the money is concerned, the payment of the money must be regarded as actually made to him at the time the sale was consummated; and viewing the question in this light, suppose Cobb instead of Parker had been summoned as the garnishee, would the court have compelled him to pay over the money to the plaintiff, and leave his, Cobb's, debts, due from Crump, unpaid? Clearly not.

Regarding the question in this light, we are of opinion that the court below erred in the judgment rendered.

Judgment reversed, and judgment here against the garnishee for the balance due, after deducting the amount of the notes due to Cobb.